R&F

# UNITED STATES BANKRUPTCY COURT

26 FEB 27   PM 1:49

## NORTHERN DISTRICT OF NEW YORK

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

---

In re:                                                          **Chapter 13**

JEFFREY S. DAVIDSON,

      Debtor,                                          **Case No.  26-10156-1**

---

## CREDITOR JOHN B. CARNETT IV'S EMERGENCY MOTION TO

## DISMISS CHAPTER 13 CASE OR, IN THE ALTERNATIVE, TO DENY

## CONFIRMATION AND FOR LIMITED RELIEF FROM STAY

---

CREDITOR JOHN B. CARNETT, IV ("Movant"), pro se, respectfully submits this:

**EMERGENCY MOTION FOR (I) EXPEDITED HEARING ON SHORTENED NOTICE; (II) OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN; AND (III) DISMISSAL FOR CAUSE, OR IN THE ALTERNATIVE, LIMITED RELIEF FROM THE AUTOMATIC STAY**

**PRELIMINARY STATEMENT**

This emergency motion presents a threshold defect: Debtor commenced this Chapter 13 case

while his prior Chapter 7 case remains pending (and on appeal), involving the same debts and the

same principal asset. Debtor's own schedules admit the Chapter 7 "remains pending," yet the

Chapter 13 Plan is funded by a proposed sale/balloon tied to that same residence. Under the

single-estate rule and the authorities cited herein (including Freshman, Turner, and Barnes), the Court should dismiss this case at the outset, or at minimum deny confirmation.

Immediate consideration is warranted because the petition's timing and plan structure indicate a stay-driven filing aimed at halting enforcement activity that Movant resumed only after prevailing at trial on denial of discharge.

Independently, the Plan and schedules reflect multiple confirmation and dismissal defects on their face: the Plan is underfunded, proposes a 0% dividend to general unsecured creditors, relies on a speculative balloon payment from a residence sale that Debtor cannot unilaterally control, and is irreconcilable with Debtor's prior sworn ownership representations concerning the same property.

For these reasons, Movant respectfully requests expedited, threshold adjudication and such other relief as the Court deems just and proper.

## REQUEST FOR EXPEDITED HEARING ON SHORTENED NOTICE (EMERGENCY RELIEF)

Movant respectfully requests that the Court schedule this Motion for hearing on shortened notice and rule on an expedited basis.

1. **Nature of the emergency.** This Motion presents threshold, record-based grounds for immediate relief, including the simultaneous-pending-case defect and multiple independent confirmation and dismissal defects apparent on the face of the Plan and schedules (including lack of feasibility, lack of good faith, and zero dividend to unsecured creditors). The Debtor filed this Chapter 13 case on February 13, 2026, while

the Chapter 7 matter remains pending and on appeal, and has invoked the new

bankruptcy filing as a basis for delay in imminent, time-sensitive state-court service /

jurisdictional proceedings. Movant therefore seeks prompt threshold adjudication of the

simultaneous-case defect and/or narrow clarification that such threshold, non-collection

relief is not being improperly obstructed by a stay-driven Chapter 13 filing.

2.   **Practical prejudice from delay.** Delay will: (i) multiply proceedings and costs; (ii)

preserve a stay-based tactical advantage in parallel, non-collection State-Court procedure;

and (iii) force Movant to litigate around a Chapter 13 case that should be dismissed at the

outset.

3.   **Authority**. Movant requests expedited consideration pursuant to Fed. R. Bankr. P.

9006(c) (reduction of notice periods for cause) and the Court's inherent authority to

control its docket and prevent abusive filings.

4.   **Notice to Debtor's counsel.** Movant is proceeding pro se and will file this Motion with

the Clerk for docketing. Upon docketing, Debtor's counsel will receive electronic notice

through the Court's CM/ECF system. Movant will also transmit a courtesy copy to

Debtor's counsel by email.

Movant respectfully requests that the Court set this Motion for hearing within 7 days (or as soon

as the Court's calendar permits) and shorten any otherwise applicable notice periods as the Court

deems appropriate.

**JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District.

## FACTS (FROM DEBTOR'S FILED PAPERS)

1. **Petition date.** Debtor filed this Chapter 13 case on February 13, 2026.

2. **Plan funding and term.** Counsel's fee consumes the Plan while unsecured creditors receive nothing. Debtor proposes a plan funded at approximately $14,000 total, of which $7,500 (over one-half) is allocated to Debtor's counsel as an administrative expense payable before any distribution to general unsecured creditors, and the Plan provides $0.00 to general unsecured creditors. (See Plan; 11 U.S.C. § 1326(b)(1).)

3. **Balloon source.** The Plan states that the Debtor will contribute proceeds from the "sale of residence" sufficient to satisfy any unpaid plan balance by the end of the 36-month term.

4. **Unsecured creditors receive $0.** The Plan indicates no distribution to unsecured creditors.

5. **Residence ownership disclosed as partial, with co-owners.** On Schedule A/B, Debtor lists the residence at 76 Joe Bean Road, Salem, NY 12865 with a current value of $531,600, but lists the value of the portion he owns as $177,198.23, describing the ownership as "JTROS with John Davidson and Terri Davidson."

6. **Liens and tax claims against the residence.** The schedules and plan materials disclose secured/tax claims tied to the residence, including (among others) the Greenwich Tax Collector and Trustco Bank liens.

7. Income disclosures include significant recurring third-party support. On Schedule I, Debtor reports: • $1,000/month on line 8h ("Other monthly income") described as a "contribution to household," and • $2,000/month "Family support payments."

8. Voluntary retirement deductions. On Schedule I, Debtor lists a monthly payroll deduction for voluntary retirement contributions of approximately $297.27/month.

9. Prior Chapter 7 case referenced as pending. Debtor's Schedule A/B states: "Property previously scheduled in Chapter 7 Case No. 23-11130, which remains pending."

10. The Timing of the Filing and Subsequent Concealment Confirm an Improper Purpose.

The Chapter 13 petition was filed on February 13, 2026 three days after Debtor's counsel suffered an adverse ruling. On February 10, 2026, in the related Chapter 7 adversary proceeding, the Bankruptcy Court denied Debtor's counsel's evidentiary objections and authorized the transmission of all trial exhibits to the District Court for the pending appeal.

Debtor's counsel deliberately withheld notice of the bankruptcy for five days. Despite filing the petition on February 13, counsel did not file a suggestion of bankruptcy (Notice of Bankruptcy, NYSCEF Doc No. 59) in the State court action until February 18, 2026. The Notice was timed to obstruct a specific hearing: the February 18 filing was made immediately before a scheduled appearance in Washington County Supreme Court, and was explicitly used to argue that the automatic stay barred Movant's service/jurisdictional proceedings.

This sequence—adverse ruling, immediate filing, strategic concealment, and tactical disclosure to block a hearing—demonstrates that the petition was not filed to reorganize debts, but to obtain a litigation weapon to use against Movant.

**RELIEF REQUESTED**

Joinder note (stay-relief requested only in the alternative). Movant brings this as a dismissal/confirmation motion first and foremost. Any request for stay relief is pleaded strictly in the alternative—only if the Court declines to dismiss promptly—so the Court may grant threshold dismissal without reaching stay relief.

Movant requests that the Court:

A. Deny confirmation of the current Plan;

B. Dismiss the case for cause (including bad faith and improper simultaneous filing), or alternatively convert as the Court deems appropriate;

C. In the alternative, grant relief from the automatic stay for cause to permit Movant to proceed in state court on service/jurisdictional relief and related non-collection procedural matters, and/or to protect Movant's rights while the Chapter 7 appeal remains pending;

D. Order such other and further relief as the Court deems just and proper, including, without limitation, dismissing this case with prejudice to refiling for a period of 180 days, to deter future abuse of the bankruptcy process; and

E. Grant such other and further relief as the Court deems just and proper.

**ARGUMENT**

## I. THE PLAN IS NOT CONFIRMABLE BECAUSE IT IS NOT PROPOSED IN GOOD FAITH AND APPEARS DESIGNED PRIMARILY TO FINANCE COUNSEL'S COMPENSATION WHILE PAYING UNSECURED CREDITORS NOTHING

This Chapter 13 case is a classic 'Chapter 20' filing—a bad faith attempt to obtain the automatic stay benefits of Chapter 13 without any intent to provide meaningful distribution to creditors

A Chapter 13 plan must be proposed in good faith and not by means forbidden by law. A plan that functions as a litigation shield while channeling minimal funds primarily to administrative expenses, with nothing to general unsecured creditors, is a classic badge of bad faith and warrants denial of confirmation.

Movant is not a "late-arriving" creditor seeking leverage. Movant prosecuted the only § 727 fraud adversary to trial, obtained a denial of discharge, and—only because of that adjudicated fraud—was able to resume state-court enforcement. Debtor's Chapter 13 filing on the eve of renewed state-court proceedings functions as a stay-driven reset designed to deprive Movant of the benefit of that hard-won judgment and to force Movant back into a payment structure where general unsecured creditors receive no dividend while administrative expenses—most notably Debtor's counsel's $7,500 fee—consume the Plan funding. This sequence is highly probative of an improper purpose and a lack of good faith under 11 U.S.C. § 1325(a)(3) and § 1325(a)(7).

Having already litigated and prevailed on the merits of the Debtor's fraud, Movant should not be forced back into bankruptcy court to litigate a second, overlapping case filed solely to avoid the consequences of the first.

Here, the Plan proposes only about $14,000 of total payments over three years, while simultaneously paying unsecured creditors $0. Debtor allocates $7,500 (over one-half of the total plan funding) to counsel as an administrative expense payable before any distribution to general unsecured creditors. (See Plan; 11 U.S.C. § 1326(b)(1).) This allocation is highly probative of purpose and good faith because it shows the Plan functions primarily to pay counsel while providing no dividend to unsecured creditors. (See 11 U.S.C. § 1325(a)(3), (a)(7) (and, if applicable, § 1325(a)(4)).)

## II. THE PLAN'S "SALE OF RESIDENCE" BALLOON IS FACIALLY UNREALISTIC AND CANNOT SUPPORT CONFIRMATION

The Plan's feasibility depends on a month-36 balloon payment funded by a "sale of residence." But the Debtor's own schedules—and basic arithmetic—show why that funding premise fails.

A. The balloon payment is mathematically and practically infeasible

1. Partial interest with co-owners (JTROS). The Debtor does not claim full ownership. He discloses a JTROS interest with two non-debtor co-owners. A sale of the residence is therefore not within the Debtor's unilateral control. Any sale would implicate the rights and consent (or litigation) involving co-owners.

2.  Liens and tax claims consume the disclosed value of Debtor's interest. Debtor values his one-third interest at $177,198.23, yet the secured/tax liens he acknowledges total $262,271.79 ($207,699.54 + $49,985.72 + $4,586.53), leaving a deficit of $85,073.56 before any transaction costs.

Even crediting Debtor's claimed homestead exemption of $89,776.07, the net theoretical remainder is only $4,702.51 ($89,776.07 − $85,073.56)—and that assumes a full-price sale at Debtor's stated valuation and ignores ordinary costs of sale (broker commission, transfer taxes, closing costs). The Plan therefore rests on speculation, not "reasonable assurance" of performance as required by 11 U.S.C. § 1325(a)(6).

3.  Transaction costs make the shortfall worse. Even if a sale were possible, normal transaction costs (broker commission, transfer taxes, closing costs) would further erode any theoretical equity. On the Debtor's own numbers, there is no credible path to generate net proceeds to fund a balloon.

4.  Feasibility requires more than speculation. Feasibility demands a showing that the Debtor can "reasonably be expected to perform" the plan's terms; speculation about future asset sales, refinancing, or negotiations does not satisfy § 1325(a)(6).

B. The Debtor's ownership representations are internally inconsistent across the two cases—undermining credibility and good faith

The Debtor cannot have it both ways. In his Chapter 7 case, the Debtor swore under penalty of perjury that he owned 100% of the residence. Now, in this Chapter 13 case—filed while that

Chapter 7 remains pending—he claims only an approximately one-third interest. This inconsistency is not explained and cannot be reconciled.

Importantly, Debtor did not file this Chapter 13 pro se. Debtor has been represented by counsel through the Chapter 7 litigation and the adversary proceeding. If the residence ownership were truly one-third, it should have been corrected by amendment in the Chapter 7 case. The failure to correct it there—while now advancing a new ownership percentage here—supports the inference that the change is tactical.

C. The residence's recent marketing history undercuts any "reasonable assurance" of a sale

Movant understands—based on publicly available listing history—that the residence was listed for sale on or about September 23, 2025, remained on the market approximately 108 days without selling, and was taken off market on or about January 9, 2026. That history materially undercuts the Plan's assumption of a prompt, full-value sale and confirms the balloon is speculative, not feasible.

Accordingly, the Plan is infeasible under 11 U.S.C. § 1325(a)(6), and the same facts support denial for lack of good faith under 11 U.S.C. §§ 1325(a)(3) and (a)(7).

**III. THE PLAN FAILS THE PROJECTED DISPOSABLE INCOME REQUIREMENT AND IMPROPERLY PRIORITIZES VOLUNTARY RETIREMENT SAVINGS WHILE PROPOSING A 0% DIVIDEND TO UNSECURED CREDITORS**

If an unsecured creditor objects, the Code requires that the Debtor commit all projected disposable income to payments under the plan during the applicable commitment period.

The Debtor's schedules reflect income and deductions that require heightened scrutiny:

1. **Third-party support is real income for feasibility and disposable income.** Debtor reports $1,000/month as a household contribution and $2,000/month as family support. If these payments are reliable enough to support the Debtor's budget, they are relevant to projected disposable income and plan feasibility. The Debtor should be required to provide a sworn explanation and documentation showing whether these payments will continue throughout the plan term.

2. **Voluntary retirement contributions must be justified as reasonably necessary—especially where unsecured creditors receive $0.** The Debtor asks this Court to permit him to fund a voluntary retirement account—with no showing that the contributions are necessary for his support—while simultaneously proposing to pay unsecured creditors nothing. Even in jurisdictions that permit some retirement contributions in the disposable income calculation, the Debtor bears the burden of demonstrating that these contributions are reasonably necessary and consistent with good faith. The Debtor has offered no such justification.

Requested relief on disposable income: Movant respectfully requests that the Court require the Debtor to (i) amend Schedule I and the Plan to treat the $297.27/month retirement deduction as disposable income available to fund plan payments, or (ii) file a detailed sworn justification (with supporting documents) establishing why the contribution should be excluded notwithstanding a 0% dividend to unsecured creditors.

## IV. THE PETITION'S "ASSET VALUE RANGE" APPEARS INFLATED OR MISLEADING WHEN LIENS AND PARTIAL OWNERSHIP ARE PROPERLY ACCOUNTED FOR

Debtor checked the Petition's broad asset range (between $100,001 and $500,000). Yet the Debtor's primary asset disclosure is a partial interest in a residence that is encumbered. Secured claims materially affect any meaningful net value.

The Plan's reliance on a "sale of residence" for the balloon likewise demonstrates that net value matters. Where liens and partial ownership eliminate any credible net proceeds, the broad "asset range" disclosure becomes at best incomplete and at worst misleading.

At a minimum, the Court should require amended disclosures clarifying:

(i) the total secured debt against the residence; (ii) how the Debtor calculates any net proceeds available to him from any sale; (iii) whether the Debtor claims any exemption and how that would affect proceeds; and (iv) why a balloon based on a sale is feasible given the disclosed JTROS interest.

## V. DISMISSAL IS REQUIRED AT THE THRESHOLD: THE CHAPTER 13 PETITION IS AN IMPROPER SIMULTANEOUS / OVERLAPPING FILING WHILE THE PRIOR CHAPTER 7 CASE REMAINS PENDING

Debtor's own Schedule A/B states that the residence was previously scheduled in Chapter 7 Case No. 23-11130 and that the Chapter 7 case "remains pending." This is not a technicality—it is the threshold defect in this case.

**A. The controlling authority (Freshman, Turner, Sidebottom/Wilson, Barnes)**

1. Freshman establishes the governing rule (and calls this an abuse of process). In Freshman v. Atkins, the Supreme Court held that "the pendency of a voluntary petition in bankruptcy precludes consideration of a second voluntary petition in respect of the same debts." 269 U.S. 121, 123–24 (1925). The Court further stated:

**"To ignore [the prior application], and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute."**

Id. at 124 (emphasis added).

2. Turner treats the issue as threshold and warns against abuse. In In re Turner, the Second Circuit Bankruptcy Appellate Panel adopted the majority "single estate" principle and warned that allowing simultaneous filings "does run the risk of making available an easy avenue for abuse of the bankruptcy system" by enabling debtors to file multiple cases when they do not achieve their intended goal. 207 B.R. 373, 379 (B.A.P. 2d Cir. 1997). The BAP further observed that "[t]he only rationale for not converting an open case and filing a new petition is the creation of a new automatic stay," frustrating relief previously available to creditors. Id.

3. Sidebottom (and Wilson) prohibit simultaneous cases involving the same creditors or debts. The Seventh Circuit endorsed the majority rule, holding that a debtor may not simultaneously prosecute two bankruptcy cases when the cases have debts in common. In

re Sidebottom, 430 F.3d 893, 897–98 (7th Cir. 2005). In re Wilson articulates the

minimum rule in unmistakable terms: "At a minimum, [Sidebottom] does prohibit

simultaneous cases involving the same creditors or the same debts." 390 B.R. 899, 901

(Bankr. N.D. Ind. 2008).

4.  Barnes is directly on point in this Circuit and affirms dismissal of a Chapter 13 filed

    while a Chapter 7 remains pending, and affirms sanctions. In In re Barnes, the Eastern

    District of New York affirmed dismissal of a Chapter 13 case "as it was simultaneously

    filed with a pending Chapter 7 case," expressly relying on Turner's adoption of the

    majority rule. 231 B.R. 482, 484 (E.D.N.Y. 1999).

**B. The pending appeal does not cure the simultaneous filing defect**

Debtor may argue that because the Chapter 7 trustee filed a no-asset report, the Chapter 7 case is

"administratively complete," But administrative closure is not final closure. Under 11 U.S.C. §

350, a case closes only upon entry of a final decree after the estate is fully administered. Here,

the denial of discharge is on appeal—the §727 adversary proceeding is not finally resolved. The

Supreme Court in Freshman rejected a similar argument, holding that a first case "still pending"

for seven years barred a second filing. 269 U.S. at 124. This case is pending on active appeal—a

fortiori, the simultaneous filing is impermissible. The pending appeal should not bar this Chapter

13 filing. This argument fails.

First, the Chapter 7 case remains open unless and until closed under 11 U.S.C. § 350 by entry of

a final decree. Second, the appeal is part of the same proceeding; the discharge denial is not final.

The debts and parties are identical, and Debtor's own Schedule A/B admits the Chapter 7 case

"remains pending." Third, even under any minority approach, the admitted overlap of creditors/

debts and the Plan's stay-driven structure compel dismissal.

### C. Overlap is admitted and is fatal; dismissal may be granted at the threshold

The defect is not theoretical. Debtor's Plan is explicitly premised on a "sale of residence"

balloon payment, yet Debtor simultaneously swears that the same residence was previously

scheduled in the still-pending Chapter 7 case.

Movant does not seek a trial on the merits of bad faith. The Court may dismiss at the threshold

based on Debtor's own filings and judicially noticeable facts. No evidentiary hearing is required

where the Debtor's own schedules admit the overlap and the Plan's funding premise.

### D. Abuse-prevention language supports dismissal "in limine"

The Supreme Court in Freshman quoted approvingly from the Second Circuit:

"Not only should the court of bankruptcy protect the creditors from an attempt to retry an issue

already tried and determined between the same parties, but the court, for its own protection,

should arrest, in limine, so flagrant an attempt to circumvent its decrees."

In re Fiegenbaum, 121 F. 69, 70 (2d Cir. 1903), quoted in Freshman, 269 U.S. at 124.

For all of these reasons, dismissal for cause under 11 U.S.C. § 1307(c) is warranted at the outset

based on the improper simultaneous/overlapping filing alone.

## VI. DISMISSAL IS ALSO WARRANTED FOR CAUSE, INCLUDING BAD FAITH, BASED ON THE TOTALITY OF CIRCUMSTANCES

**A Chapter 13 case may be dismissed "for cause," and bad faith is cause. This case should be dismissed because:**

1. Timing and tactical concealment confirm bad faith. The petition was filed hours after Debtor's counsel suffered an adverse ruling in the Chapter 7 adversary proceeding. Counsel then deliberately withheld notice of the filing for five days, deploying it only on the eve of a state court hearing to obstruct Movant's proceedings. This is not the conduct of a debtor seeking the "fresh start" purposes of Chapter 13; it is the conduct of a litigant using the Bankruptcy Code as a litigation shield. See In re Barnes, 231 B.R. at 485 (bad faith exists where debtor files petition for the "sole purpose of frustrating or delaying" a creditor).

2. Feasibility defects. Even accepting Debtor's homestead-exemption theory, the Plan's "sale of residence" balloon remains speculative and internally inconsistent. On Schedule C, Debtor claims a homestead exemption of $89,776.07 against his stated $177,198.23 interest in 76 Joe Bean Road. Debtor may argue this leaves roughly $87,422.16 of non-exempt value (before secured liens and costs). But Debtor's own lien disclosures total $262,271.79, yielding an $85,073.56 deficit before sale costs—making the balloon mathematically unrealistic even on Debtor's best-case assumptions. Debtor has provided no listing agreement, no appraisal, no payoff statements, and no sworn explanation showing how the proposed balloon can be funded after liens, exemptions, and sale costs.

3.  Recent marketing history further undermines feasibility and supports bad faith. Publicly available listing history reflects that the residence was listed on or about September 23, 2025, had a price reduction and was taken off market on or about January 9, 2026, after approximately 108 days without a sale. That history materially undercuts the Plan's assumption of a prompt, full-value sale sufficient to fund a balloon payment and reinforces that the filing is stay-driven rather than a sincere reorganization. (See exhibit A, Zillow Listing History)

4.  Underfunding despite recurring third-party support. Debtor discloses $1,000/month "contribution to household" and $2,000/month family support, yet proposes only $250/month and $0 to unsecured creditors.

5.  Voluntary retirement contributions while unsecured creditors receive nothing. Debtor claims $297.27/month voluntary retirement contributions, which should be scrutinized under disposable income and good faith.

## VII. IN THE ALTERNATIVE, THE COURT SHOULD GRANT RELIEF FROM STAY FOR CAUSE TO PREVENT USE OF THIS CASE AS A PROCEDURAL WEAPON

If the Debtor or counsel intends to invoke the automatic stay as a blanket shield to delay non-collection procedural relief (including court-directed service, jurisdictional determinations, or other threshold matters in state court), that is cause for stay relief.

The record shows the automatic stay is being used as a litigation weapon to nullify the practical effect of the denial of discharge and to halt Movant's resumed state-court enforcement; that is "cause" for relief under § 362(d)(1) to the extent the Court does not dismiss the case outright.

**Movant seeks limited stay relief to:**

• proceed in state court on service and jurisdictional relief (not collection); • preserve Movant's rights and prevent prejudice from delay tactics; and • ensure that this Chapter 13 case is not used to derail proceedings unrelated to estate administration.

The five-day delay in disclosing this filing, followed by its tactical deployment on the eve of a state court hearing, confirms that the automatic stay is being used not to protect estate assets, but as a procedural weapon. Cause for relief from the stay is therefore manifest.

Movant respectfully requests that the Court enter an order clarifying the scope of the stay within 14 days, or in the alternative set a briefing schedule on Movant's request for limited stay relief.

## REQUEST FOR CLARIFICATION REGARDING SCOPE OF STAY (AND, IF NECESSARY, LIMITED STAY RELIEF)

If the Debtor contends that the automatic stay bars Movant from seeking procedural relief in state court (including court-directed service and jurisdictional determinations), Movant requests that the Court enter an order clarifying the scope of the stay and confirming that such non-collection, threshold matters are not stayed. In the alternative, Movant seeks limited relief from the stay to pursue such relief.

If the Court prefers a record on the issue, Movant respectfully requests an order directing Debtor (and/or counsel) to file a short sworn statement:

a. Specifying whether the automatic stay is being invoked as to the specific proceedings identified by Movant;

b. Identifying the specific subsection(s) of 11 U.S.C. § 362(a) relied upon;

c. Identifying the concrete act(s) the Debtor contends would violate the stay (and why); and

d. Explaining how such acts constitute collection or control over estate property rather than threshold jurisdiction/service matters.

For all the foregoing reasons—the improper simultaneous filing, the internally inconsistent sworn statements, the mathematically infeasible balloon payment, the zero dividend to unsecured creditors, and the tactical timing and concealment of the petition—this case cannot proceed. It should be dismissed at the threshold.

## CONCLUSION

For the reasons above, Movant respectfully requests that the Court deny confirmation, dismiss this case for cause (including bad faith), or alternatively grant limited stay relief for cause, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 27, 2026

By: _____

John B. Carnett IV

95 Salem Street

Greenwich, NY. 12834

Telephone: 215-834-0365

E-Mail: carnett@reclaimcraft.com



**☰ Zillow**

Back to search

♡ Save   ⬆ Share   ⋯ More

**Off market**

⬆ Street View

**☰ Zestimate®**
# $533,200
76 Joe Bean Rd, Greenwich, NY 12865

Est. refi payment: **$3,628/mo**  ⓢ **Refinance your loan**

| **5** beds | **3** baths | **3,579** sqft |

**Claim home**

| ⌂ SingleFamily | ⚲ Built in 2007 | ⚏ 7.82 Acres Lot |
| ☰ $533,200 Zestimate® | ⬚ $149/sqft | ⚙ $3,627 Estimated rent |

## Home value

| Zestimate® **$533,200** | Estimated sales range **$507,000 - $560,000** | Rent Zestimate® **$3,627/mo** |

## Zestimate® history   Table view
**+254% in last 10 years**

| ⌂ Home values | ⓢ Rent Zestimate | ⬚ Tax paid |

$293.5K

$600K



‹ **Back to search**          **Zillow**®          ♡ Save  ⬆ Share  ••• More

Home value      Cost calculator      **Home details**      Neighborhood

**Services availability**

🔵 Set Up Your Own Safety ↗

Claim home

## Price history

| Date | Event | Price |
|------|-------|-------|
| 1/9/2026 | Listing removed | $549,900<br>$154/sqft |
| Source: Global MLS #202526448 Report | | |
| 10/9/2025 | Price change | $549,900 -2.7%<br>$154/sqft |
| Source: Global MLS #202526448 Report | | |
| 9/23/2025 | Listed for sale | $565,000 +119.8%<br>$158/sqft |
| Source: Global MLS #202526448 Report | | |
| 10/22/2021 | Sold | $257,000<br>$72/sqft |
| Source: Public Record Report | | |

## Public tax history

| Year | Property taxes | Tax assessment |
|------|---------------|----------------|
| 2024 | -- | $540,700 +14% |
| 2023 | -- | $474,300 +81% |
| 2022 | -- | $262,100 +13.5% |

ˇ Show more

Find assessor info on the county website

## Neighborhood: 12865

R&F

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK**

2026 FEB 27  PM 1:49

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

In re:
JEFFREY S. DAVIDSON,
Case No.: 26-10156-1

Chapter 13

**CERTIFICATE OF SERVICE**

I, John B. Carnett, IV, hereby certify that on February 27 2026, I served the following
document(s):

**EMERGENCY MOTION FOR (I) EXPEDITED HEARING ON SHORTENED NOTICE;
(II) OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN; AND (III)
DISMISSAL FOR CAUSE, OR IN THE ALTERNATIVE, LIMITED RELIEF FROM
THE AUTOMATIC STAY / Exhibit A and this CERT of SERVICE**
upon the following parties in this case by the method(s) indicated below:

**Method of Service:**

- **HAND DELIVERY TO ALBANY BK CLERK**
- **First-Class Mail:** Sent via first-class U.S. Mail, postage prepaid, to the
  address(es) listed below.
- **Electronic Mail (CM/ECF):** Electronically via the Court's CM/ECF system to the
  registered users listed below.

1. Elizabeth Fairbanks-Fletcher 178 Elm St., Ste. 4, Saratoga Springs, NY 12866

I declare under penalty of perjury that the foregoing is true and correct to the best of
my knowledge, information, and belief.

Executed on: February 27, 2026

**/s/ John B. Carnett, IV**

95 Salem Street Greenwich, NY 12823 / carnett@reclaimcraft.com